215 N.J. Super. 306 (1987)
521 A.2d 1300
ROBERT E. ENRIGHT AND ROSEMARY S. ENRIGHT, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
HAROLD W. LUBOW AND RYNA LUBOW, DEFENDANTS-RESPONDENTS.
and
U.S. LIFE TITLE INSURANCE CO. OF NEW YORK. A CORPORATION OF NEW YORK, DEFENDANT-APPELLANT,
v.
EARLE BAILEY, P.E. & ASSOCIATES, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1984.
Decided May 30, 1985.
Reargued October 22, 1986.
Decided February 19, 1987.
*308 Before Judges KING, DEIGHAN and HAVEY.
Ben J. Slavitt argued the cause for appellant (Slavitt, Fish & Cowen, attorneys; Ben J. Slavitt and Ronald G. Schecter, on the brief).
Donald L. Minassian argued the cause for respondent-cross appellant Robert Enright (Draesel, Sunshine, Atkins & Minassian, attorneys).
Paul V. Strawinski argued the cause for respondent-cross-appellant Earle W. Bailey, P.E. & Associates (Organ & Strawinski, attorneys).
Harold M. Cohen argued the cause for defendants-respondents, Lubow.
The opinion of the court was delivered by DEIGHAN, J.A.D.
*309 This matter comes before the court pursuant to the grant of a motion for reconsideration of this court's opinion reported at 202 N.J. Super. 58, certif. den. 104 N.J. 376 (1986). Plaintiffs' petition for certification to the Supreme Court on the issue of counsel fees was denied without prejudice to apply to this court for reconsideration of its prior disposition on the counsel fee issue. Previously we reversed an award of $15,000 counsel fees granted by the trial court pursuant to R. 4:42-9(a)(6), 202 N.J. Super. at 84. Though the petition for certification referred only to the "issue of counsel fees in accordance with a contract between the parties" the order of the Supreme Court does not limit reconsideration to that issue. Since all parties have briefed the right to counsel fees pursuant to R. 4:42-9(a)(6) as well as the provisions under the title insurance contract, we will deal with plaintiffs' rights to attorney's fees under both the Rule and the title insurance policy.
Plaintiffs, Enrights, purchased premises in Montvale, New Jersey in 1978. At the time of purchase both a survey and title insurance policy were ordered. The survey incorrectly located an easement on the premises. This court held that the survey, with the easement improperly located, was insured under the title insurance policy. Enright, 202 N.J. Super. at 70.
Plaintiffs became aware of the easement mislocation in February of 1980. On March 30, 1980 plaintiffs signed an agreement of sale with defendant-purchasers Lubows (purchasers) but did not inform them of the problem until after the agreement of sale was signed. 202 N.J. Super. at 81. Also, the title company, U.S. Life, was not informed of the easement mislocation on the survey until March 30, 1980. The title company ordered a second survey from the original surveyors, defendant Earle Bailey, P.E. and Associates. The second Bailey survey, which was not received until after the date of settlement, indicated the inaccuracy of the prior survey. Plaintiffs' attorney then ordered another survey in June 1980 from Cassetta *310 and Associates. The third survey, which was paid for by the title company, confirmed the inaccuracy of the first survey by Bailey Associates in that the easement was located within six feet, not 50 feet, of the dwelling.
After plaintiffs received their correct survey from Cassetta, the title company offered to settle plaintiffs' claim. They offered to have an appraiser, either appointed by the court or by agreement, "to assess the difference in the value of the property with the easement in its two different locations" and to pay the difference. Plaintiffs rejected this offer and elected to seek elevated compensatory, including consequential, as well as punitive damages resulting in a seven day trial which was not concluded until Nov. 24, 1982, two years after the original offer.
In their affidavit in support of a notice of motion to the Supreme Court for temporary remand to this court plaintiffs set forth the length of the trial and the judgment entered by the trial court in their favor:
After a seven day bench trial the trial judge awarded compensatory damages in favor of the plaintiffs and against the Title Company for $22,000.00 plus $18,438.81 interest and $15,000.00 counsel fees for a total compensatory damage award of $55,438.81. The trial judge further awarded the sum of $30,000.00 in punitive damages in favor of the plaintiffs and against the Title Company.
In their application before the trial court plaintiffs sought $27,052.50 for counsel fees plus expenses of $1,531.
In our opinion on the initial appeal we held that
the judgment is affirmed as to the allowance of $22,000 compensatory damages together with interest from December 1, 1980 in favor of the Enrights against the Title Company. The judgment is reversed as to the allowance of $15,000 counsel fees in favor of the Enrights ... against the Title Company. The judgment of $30,000 punitive damages in favor of the Enrights and against the Title Company and the allowance of prejudgment interest of $18,438.81 is reversed. [202 N.J. Super. at 87]
In our previous opinion we held that "there is no authority under R. 4:42-9(a)(6), statutes or equity to allow counsel fees to ... the Enrights ... incurred in litigation of this matter."

*311 I
R. 4:42-9(a)(6) provides:
No fee for legal services shall be allowed in the taxed costs or otherwise except ...
(6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant. [Emphasis supplied].
The rule was promulgated both to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection. Kistler v. N.J. Mfgs. Ins. Co., 172 N.J. Super. 324, 328-330 (App.Div. 1980). In our view plaintiffs are not "successful claimant[s]." Giambri v. Government Employees Ins. Co., 174 N.J. Super. 162 (App.Div. 1980).
We previously held that the trial court properly awarded $22,000 as compensatory damages representing the difference in value of the property with the easement in the two different locations. The trial court measured the damages as the difference between the purchase price of $182,000 in the agreement between the plaintiffs and the first purchasers Lubows, and the purchase price of $160,000 under which the plaintiffs ultimately sold the property. 202 N.J. Super. at 58. In all other respects, the judgment in favor of plaintiffs and against U.S. Life was reversed. 202 N.J. Super. at 87.
Since plaintiffs were ultimately awarded the same measure of compensatory damages as previously offered by the title company they cannot be viewed as "successful claimant[s]." Plaintiffs demands "were exorbitant as compared with the litigated value of their [demands]". Miller v. N.J. Ins. Underwriting Ass'n, 177 N.J. Super. 584, 587 (Law Div. 1981), rev'd on other ground, 188 N.J. Super. 175 (App.Div. 1983).

II
Assuming that plaintiffs are "successful claimant[s]" under R. 4:42-9(a)(6), we have construed the Rule to be inapplicable to direct actions brought by the insured against the *312 carrier to enforce direct coverage. Vesley v. Cambridge Mut. Ins. Co., 189 N.J. Super. 521 (App.Div. 1981) (suit for fire casualty loss under a homeowner's policy  no counsel fees), affirmed by an equally divided Court, 93 N.J. 323 (1983). See also Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195 (App.Div. 1985) (action on a builder's risk policy for loss incurred by vandalism  no counsel fees); Childs v. N.J. Manufacturers Ins. Co., 199 N.J. Super. 441 (App.Div. 1985) (suit for uninsured motorist coverage  direct action  no counsel fees); Meier v. New Jersey Life Ins. Co., 195 N.J. Super. 478, 489 (App.Div. 1984) (direct action on a life insurance policy by the owner and beneficiary  no counsel fees); Miller v. N.J. Ins. Underwriting Ass'n, 188 N.J. Super. 175, 194 (App.Div. 1983) (direct action upon a fire insurance policy  no counsel fees); and Kistler v. N.J. Life Ins. Co., supra (action on an automobile liability policy for collision coverage  no counsel fees).
On the other hand, cases have supported an award of counsel fees in a direct action by an insured against the insurance carrier. Maros v. Transamerica Ins. Co., 76 N.J. 572 (1978) (counsel fees permissible on appeal and appellate court should consider the "debatability of the statutory construction issue as well as the comparatively small claim involved" in making its determination whether to award fees. 76 N.J. at 579.). Maros cited Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234 (App.Div. 1975) for authority that counsel fees were allowable on appeal. Corcoran involved a direct action on a homeowner's insurance policy for the loss of a diamond ring. The trial court granted summary judgment for plaintiff and awarded counsel fees which this court upheld pursuant to R. 4:42-9(a)(6). Id. at 246.
Our Supreme Court, mindful of the divergence of decisional law on the award of counsel fees in first party claims against insurance companies, appointed a Committee on Counsel Fee Awards on Insurance Claims to evaluate the problem. The Committee, in its report published in the New Jersey Law Journal, January 9, 1986, at 1, recommended not to extend R. *313 4:42-9(a)(6) to permit an insured to recover counsel fees in successful litigation against insurance carriers on first party claims on insurance policies. N.J.L.J, supra, at 8. The Supreme Court, in accordance with the recommendation of the Committee, has not amended the Rule to explicitly permit counsel fees in first party claims on liability and indemnity policies.
In view of the foregoing we adhere to our prior decision to deny plaintiffs' counsel fees pursuant of R. 4:42-9(a)(6).

III
Moreover our courts have generally held that any award of counsel fees pursuant to R. 4:42-9(a)(6) is not mandatory in every action on an indemnity or liability policy. The trial judge has broad discretion as to when, where and under what circumstances counsel fees may be proper. Felicetta v. Commercial Ins. Co., 117 N.J. Super. 524, 529 (App.Div. 1971). Equitable principles must govern the trial judge's decision. Ibid. Miller v. N.J. Ins. Underwriting Ass'n., 177 N.J. Super. at 587. Factors which the court may consider include: (1) the insurer's good faith in refusing to pay the demands, id. at 587; (2) excessiveness of plaintiff's demands, ibid.; (3) bona fides of one or both of the parties, Kistler, 172 N.J. Super. at 330, (4) the insurer's justification in litigating the issue; (5) the insured's conduct in contributing substantially to the necessity for the litigation on the policies, see Felicetta, 117 N.J. Super. at 529, (6) the general conduct of the parties, see Kistler, 172 N.J. Super. at 330 and (7) the totality of the circumstances, ibid.
Since an award of counsel fees is discretionary and equitable principles must govern, the following factors are decisive in this matter: (1) the title company's reasonable offer to settle when plaintiffs received their corrected survey; (2) the title company's justification in defending the action; (3) the excessiveness of the plaintiffs' demands; (4) plaintiffs' conduct in contributing substantially to the necessity for the litigation *314 and (5) the overall conduct of the parties. In this matter, plaintiffs' conduct created the necessity for the litigation, both in their relation with the Lubows and their demands well over the limits of the insurance policy. Plaintiffs' failure initially to notify both the title company and the Lubows promptly, upon learning of the defect prior to the signing of the agreement of sale, together with their intransigence contributed substantially to the necessity for litigation.
This court specifically found that the title company's conduct throughout the pendency of this incident was reasonable. Upon learning of the error in the Bailey survey it ordered a second survey from the same surveyor which disclosed the error in the original survey. The title company then paid for a third survey ordered by plaintiffs. Upon confirmation from plaintiffs' surveyor of the easement's actual location, the title company then offered to pay the difference in the value of the property with the easement at the two different locations. Furthermore, the title company gave plaintiffs the option of having an appraiser assess the damages or to have the court appoint such an appraiser. The difference in the value of the property with the easement at two different locations was the amount of damages which the trial court awarded plaintiffs which was upheld by this court. Enright v. Lubow, 202 N.J. Super. at 74.
Plaintiffs on the other hand sought $182,000 damages, the sale price of the property to the Lubows. The limit of plaintiffs' title policy was $137,000. Plaintiffs' demand was $45,000 in excess of the face amount of the policy and $160,000 in excess of their actual damages. Plaintiffs also sought the following additional damages which were disallowed by the trial court and affirmed by this court: (1) interest on mortgage payments, excluding principal, in the amount of $9,989,69; (2) $2,592 for real estate taxes on the property; (3) $1,487.86 for utilities and maintenance of the vacant premises; (4) $455 for homeowners insurance, and (5) $914.05 for storage of belongings. *315 Faced with these demands, the title company was clearly justified in litigating the issue of damages.
Furthermore both plaintiffs and the title company were aware that plaintiffs' claim hinged upon the determination of whether the first Bailey survey was inaccurate. On June 2, 1980 plaintiffs' counsel acknowledged this fact and wrote to the purchasers' Lubows' attorney that they did not accept the second Bailey survey as accurate and that "a new survey may very well locate the easement exactly where it appears." Notwithstanding this fact plaintiffs instituted this action on October 6, 1980, prior to receipt of the survey from their surveyor Cassetta and Associates.
As stated in Busik v. Levine, 63 N.J. 351, 383-384 (1973) (Conford, P.J.A.D., temporarily assigned, dissenting), concerning the mandatory requirement of prejudgment interest pursuant to R. 4:42-11(b): "Experience teaches that in many situations the winner of a money award is nevertheless denied costs by the court because of equities the other way." Id. at 383. Judge Conford cogently observed that "it does not seem fair to assume, as does the rule, that only defendants or their insurers are responsible for unreasonable failures of litigants to arrive at pretrial settlements." Id. at 384. In our view, since the award of counsel fees is discretionary, based on equitable principles and the above history of this litigation, plaintiffs are not entitled to an award of counsel fees.

IV
Plaintiffs also assert that pursuant to the provisions of their title insurance policy they are entitled to an award of counsel fees. Title insurance is governed by the same general principles applicable to policies of insurance generally. Weir v. Title Ins. Co., 125 N.J. Super. 23 (App.Div. 1973). The relevant provisions of the policy are as follows:
SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, U.S. LIFE TITLE INSURANCE

*316 Company ... insures, ... against loss or damage,... and costs, attorneys' fees and expenses which the Company may become obliged to pay hereunder, sustained or incurred by the insured by reason of:
1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;
2. Any defect in or lien or encumbrance on such title;
3. Lack of a right of access to and from the land; or
4. Unmarketability of such title.
* * * * * * * *
The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigations consisting of actions or proceedings commenced against such insured ... (Paragraph 3(a) of Conditions and Stipulations).
* * * * * * * *
The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon an insured in litigation carried on by the Company for such insured, and all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company ... (Conditions and Stipulations, Paragraph 6(b)) [Emphasis supplied].
Plaintiffs' brief selectively cites language in the title policy regarding attorneys fees but neglects to consider that language in light of the entire contract, including the Conditions and Stipulations of the policy and the exceptions from coverage indicated in the policy. The title policy specifically subjects payment of any counsel fees which may be owing to the conditions, stipulations and exceptions of the policy.
Plaintiffs rely on Summonte v. First Amer. Title Ins. Co., 180 N.J. Super. 605 (Ch.Div.), aff'd o.b., 184 N.J. Super. 90 (App. Div. 1981) in support of their argument that they are entitled to counsel fees under the title insurance policy. Summonte was also a direct action on a title insurance policy. Plaintiffs' title in Summonte was subject to a lien of a judgment against a prior owner. The existence of the judgment was not excepted from the policy. Upon learning of this encumbrance, plaintiffs requested the title company to remove the lien. The title company not only refused to remove the lien, but, contrary to the interests of its insured, took an assignment of the judgment. The insured had conveyed several lots which were *317 subject to the lien of the judgment to third parties and signed agreements with other purchasers for the remaining lots. The title company demanded a conveyance of the remaining lots for a consideration equal to plaintiff's sales prices. The title company also agreed to indemnify plaintiff insureds against any loss resulting from the conveyance. 180 N.J. Super. at 609. In Summonte, unlike the facts and circumstances in the present case, the title company not only acted wrongly against the direct interest of its insureds, but it was also actively negligent in overlooking the judgment, id. at 618, and the insureds were successful. Id. at 619.
The above cited provisions of the title insurance policy are separate covenants by the title company to defend an action which may be brought against its insured. It is a contractual undertaking and may be as limited or as broad as the insurer sees fit and may even provide for indemnification against loss without any duty to defend litigation. Hartford Acc. & Indem. Co. v. Aetna & Cas. Co., 98 N.J. 18 (1984). If an insured, with the authorization of the title insurance company, institutes suit to acquire title or to remove an encumbrance the policy provides that reimbursement will be made for "all costs, attorneys' fees and expenses in litigation carried on by its insured." Thus, the duty to defend is coextensive with the duty to indemnify and "is thus identified with the covenant to pay." Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 388-389 (1970). In Summonte, Judge Haines held that in every sense the loss of the insured was "actual", Summonte, 180 N.J. Super. at 616, and that to permit counsel fees only in defense of a claim against a title company would be "illusory." In refusing to remove the judgment, the title company in Summonte breached an implied covenant of good faith and fair dealing. Ibid.
We have no quarrel with Summonte where the title company breached not only an implied covenant of good faith and fair dealing but also the covenant insuring its insureds against encumbrances. It frustrated the purpose of insurance by its *318 own self-interest in subrogation and salvage, 180 N.J. Super. 617-619, rather than protecting the rights of its insured.
Here, the title company did not refuse to remove the encumbrance but merely waited a reasonable time until the plaintiffs' survey disclosed that there was indeed a breach of the title insurance policy insuring against encumbrances. It did not act wrongfully but, to the contrary, demonstrated good faith by offering to pay when the breach of the title insurance policy was demonstrated. The breach was not the result of its own act of negligence but rather its own reliance upon the Bailey survey. Commonwealth Land Title Ins. Co., v. Conklin Associates, 152 N.J. Super. 1, 10 (Law Div. 1977), aff'd, 167 N.J. Super. 392 (App.Div.), certif. den., 81 N.J. 285 (1979).
In view of the foregoing, we hold that plaintiffs are not entitled to attorneys fees under the terms, conditions and provisions of the title insurance policy or R. 4:42-9(a)(6).
Affirmed.