**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brett Lawrence ARRON, M.D.,
Defendant–Appellant.**

No. 91–3365
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1992.
Rehearing and Rehearing En Banc
Denied March 6, 1992.

Joshua J. Wiener, J. Perry Sansing, Brunini, Grantham, Grower & Hewes, Jackson, Miss., for defendant-appellant.

S. Mark Gallinghouse, Asst. U.S. Atty., Harry Rosenberg, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before POLITZ, Chief Judge, KING, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Brett Lawrence Arron appeals the district court's grant of summary judgment in favor of the Government, arguing that genuine issues of material fact remain as to whether the National Health Service Corps (NHSC) breached its scholarship contract with him, and acted arbitrarily and capriciously by placing him in default of his scholarship obligation. He also urges us to direct the district court to remand his case to the NHSC to consider a partial waiver of his obligation. Finding that the district court properly granted summary judgment in favor of the Government, we affirm.

## I.

Arron's claim rests upon the following uncontested facts. On May 1, 1979, Arron applied for a scholarship award through the NHSC to finance his medical education at Tulane University. *See* 42 U.S.C. §§ 254*l*–254q. Pursuant to the terms of the award, Arron executed a contract on June 18, 1979, wherein he agreed to serve one year as a member of the NHSC and to provide clinical services in designated health manpower shortage areas (HMSAs) for each year of the award. He received a total of $27,835 for the 1979–80 and 1980–81 academic years.

Arron received a deferment to complete a three-year residence in internal medicine at Charity Hospital in New Orleans.[1] Arron completed deferment forms and received deferments for the first two years of his residency. He did not, however, timely submit completed deferment forms for his third year of residency. Arron alleges that he did not submit the forms because the NHSC never forwarded them to him.

When the NHSC did not receive Arron's deferment form, it notified him by letter dated February 24, 1984, that he was in default effective October 20, 1983. In July 1984, the NHSC informed Arron that because he was in default, he could not begin his service obligation. Arron wrote to the NHSC complaining that the agency bore the responsibility of failing to supply him with the deferment forms. In a September 21, 1984 letter, the NHSC acknowledged confusion over the circumstances of Arron's placement in default and reinstated him.

After reinstatement, Arron attempted to begin his service obligation by contacting the NHSC's national and regional offices. The NHSC was unable, however, to place Arron so that he could begin his service obligation in 1984. After the NHSC failed to place Arron, he worked at Charity Hospital in internal medicine. Charity Hospital was not then on the "HSMA Placement Opportunity List" (HPOL).

On November 24, 1984, the NHSC instructed Arron to contact the Department of Health and Human Services to finalize a site placement in Louisiana before April 15, 1985. He was informed that failure to do so would result in the NHSC assigning him on the basis of its own needs. Arron did not contact HHS before the deadline.

On April 26, 1985, the NHSC notified Arron that he failed to finalize a site placement and was, therefore, assigned to a clinic in Harlingen, Texas. The NHSC informed him that his failure to serve would result in default. Arron questioned the NHSC as to whether he could safely and effectively practice primary care medicine in a predominantly Spanish-speaking com-

1. The NHSC must grant deferments for up to three years for advanced clinical training in fields of speciality approved by NHSC. 42 U.S.C. § 254m(b)(5)(A); 42 C.F.R. § 62.9.

munity because he did not speak Spanish. He proposed that instead he be allowed to serve his obligation at Charity Hospital. The NHSC denied his request because Charity Hospital was not then designated as an HPOL site. Arron refused to accept his assignment in Harlingen.

The Government filed suit against Arron on February 1, 1988, seeking damages of $178,529.55, consisting of principal in the amount of $83,505,[2] interest in the amount of $95,024.55, and additional accrued interest, for breaching his scholarship contract. On November 26, 1990, the court granted the Government's motion for summary judgment. On December 18, 1990, the court entered judgment against Arron for $221,131.62,[3] with legal interest due from the date of entry of judgment. After the trial court denied Arron's motion for reconsideration or new trial, Arron timely filed a notice of appeal with this court.

## II.

For his first ground of appeal, Arron argues that we should remand to the district court because its opinion fails to articulate the substantive basis for its decision to grant summary judgment to the Government. Although we agree with Arron that the district court's bare-bones opinion, when viewed in isolation, furnishes scant basis for its holding, the undisputed facts of this case illuminate the foundation of the court's decision. Therefore, we find a sufficient basis in the record to proceed with our review of the district court's decision. *See O'Neill v. Air Line Pilots Ass'n, Int'l,* 886 F.2d 1438, 1443 (5th Cir.1989), *rev'd on other grounds,* — U.S. —, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

Arron next contends that the trial court erred when it granted the Government's motion for summary judgment because his affidavit shows that a factual dispute exists as to whether he or the NHSC was responsible for his failure to commence his service obligation. We review the district court's grant of summary judgment de novo, applying the same standards that the district court used. *Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989) (citations omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In viewing the summary judgment record, we make any factual inferences in favor of the nonmovant. *Degan,* 869 F.2d at 892.

■ Arron argues that his affidavit establishes that a genuine issue of material fact exists as to whether the NHSC mailed the May 4, 1983 letter with the deferment forms and that, as a result, an issue of fact exists as to whether he or the NHSC breached the contract. To reverse summary judgment, Arron must show that a genuine fact issue exists that is material to the outcome of the dispute. A fact is material if it might affect the outcome of the suit under the governing substantive law. *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Since Arron's briefs were filed, we decided that "[t]he conditions imposed upon an NHSC scholarship recipient arise from statutory directives, not a negotiated agreement between the parties." *United States v. Melendez,* 944 F.2d 216, 219 (5th Cir.1991). We thus look to legislative intent, rather than use contract principles, to review his claim. *Id.* Accordingly, Arron's contract claim does not raise a genuine issue of fact material to the dispute.

Arron alternatively argues the NHSC acted arbitrarily and capriciously by neglecting to mail its May 4, 1983 letter concerning his deferment. Arron alleges that he did not receive this letter, which contained the deferment forms he failed to

---

**2.** These damages represent three times the scholarship amount received by Arron, calculated according to 42 U.S.C. § 254o(b)(1).

**3.** This amount represents $83,505 in principal and $137,626.62 in accrued interest.

submit. Arron's inability to begin his service obligation in 1984 stemmed from his failure to submit these forms in time, because as a result of the delay, the NHSC was unable to place him during the 1984 placement cycle.

■ Omissions of the NHSC that affect the recipient's ability to fulfill his service obligation may provide a basis for relief. *See id.* Arron raises a fact issue as to whether the NHSC's failure to send him the deferment forms impeded his ability to fulfill his obligation in 1984. However, the Government brought the instant suit because Arron rejected his placement in April 1985, not because he failed to complete the deferment forms in 1984. After the NHSC placed Arron in default in 1984, it admitted some confusion as to whether the deferment forms had actually been sent. After receiving the completed forms, the NHSC reinstated Arron and gave him an opportunity to match to an HPOL site in the state of Louisiana before April 15, 1985. When Arron failed to do so, the NHSC assigned him to an HPOL site in Harlingen, Texas, at which he refused to serve. An NHSC scholarship recipient breaches his scholarship contract when he fails to begin or complete his service obligation. *See* 42 U.S.C. § 254*o*(b)(1). Arron's allegation that the NHSC neglected to mail him the deferment forms in 1984 has no bearing on the outcome of the dispute. Accordingly, we find that the district court properly granted summary judgment to the Government on this ground.

■ Finally, Arron argues for the first time on appeal that his case should be remanded to the NHSC so that the agency may consider a waiver of some portion of his service requirements. He claims that he should be credited for partial completion of his service requirements because of his employment at Charity Hospital, which the

NHSC designated as an HPOL site in 1986. In making this claim, Arron urges us to follow the Ninth Circuit in *Rendleman v. Bowen,* 860 F.2d 1537 (9th Cir.1988). *Rendleman* reversed a grant of summary judgment in favor of a physician who challenged the determination that he was in default of his service obligation because the area surrounding the clinic he worked in was not designated as an HMSA, and directed the district court to grant summary judgment in favor of the Secretary of HHS on the issue of Rendleman's default. *Id.* at 1544.

■ Arron interprets the Ninth Circuit as endorsing the notion that the NHSC should consider for a waiver any individual who unilaterally opts to provide medical services at a clinic or hospital which, fortuitously, is later designated as an HPOL site. *Rendleman* does not support this interpretation. One member of the panel in *Rendleman* was concerned that the record did not support the district court's assumption that "Rendleman's service at the ... [c]linic, although technically not in compliance with the NHSC contract, nevertheless fulfilled [his] obligations under the Act," *id.* at 1544 (Skopil, J., concurring), and recommended remand to the agency on that basis. The remaining panel members merely expressed that their decision did not foreclose the possibility of remand on this ground by the district court. *Id.*[4] Moreover, the statutory scheme governing the NHSC scholarship program makes clear that the Secretary of HHS retains sole authority to determine how to administer the program, including site selection. See 42 U.S.C. §§ 254*l*, 254m.

Nor does Arron make any showing that he would be eligible for waiver. Section 254*o*(c)(3) permits the Secretary of HHS to waive any portion of recoverable damages in cases of extreme hardship or good cause

---

**4.** The *Rendleman* panel majority noted that "the district court may consider whether [Rendleman's] service in establishing a medical clinic in a poverty area, or the financial resources available to Rendleman as a result of such service, is sufficient for the [NHSC] to consider whether to ... grant a waiver of all or part of his obligation as a result of his prior service." *Rendleman v.*

*Bowen,* 860 F.2d 1537, 1544 n. 8 (9th Cir.1988). Contrary to Arron's view, we do not construe this language as permitting the district court to determine whether service at a site not listed on the HPOL could justify a waiver of the full damage provision. Rather, it confirms that the authority to make such a determination remains solely within the province of the NHSC.

shown. Arron does not argue that extreme hardship prevented him from fulfilling his service obligation. Nor has he shown good cause for failing to comply with the terms of his service obligation. Consequently, we find no reason to direct the district court to remand his case to the NHSC.

### III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the Government.